UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MATTHEW McCASKILL,

                          Plaintiff,

              -against-                                    7:13-CV-0238 (LEK)

SHOPRITE SUPERMARKETS and
DOMINIC AUSIANO,

                          Defendants.

---

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

In this employment case, *pro se* Plaintiff Matthew McCaskill ("Plaintiff") alleges that: (1) Defendant ShopRite Supermarkets, Inc. ("ShopRite") discriminatorily terminated his employment on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–1 et seq.; and (2) ShopRite and Defendant Dominic Ausiano ("Ausiano") (collectively, "Defendants") defamed and intentionally inflicted emotional distress upon Plaintiff. See Dkt. No. 1 ("Original Complaint").[1]  Presently before the Court are six of Plaintiff's Motions to amend the Original Complaint, Defendants' Motion to dismiss Plaintiff's state-law claims, and Defendants' Letter Motion seeking certain procedural accommodations.  Dkt Nos. 24; 24-1 ("Second Motion to Amend and Amended Complaint"); 25; 25-1 ("Third Motion to Amend and Amended Complaint"); 34 ("Fourth Motion to Amend and Amended Complaint"); 35 ("Fifth

---

[1] The Honorable Andrew T. Baxter, U.S. Magistrate Judge, correctly noted, in granting Plaintiff *in forma pauperis* status and authorizing service of the Original Complaint, that there is no individual liability under Title VII and therefore Ausiano was not a proper Defendant on that claim. Dkt. No. 9 ("IFP Order").  While the IFP Order did not explicitly state that the Title VII claim against Ausiano was dismissed, the Court will treat the IFP Order as an order of dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Motion to Amend and Amended Complaint"); 36 ("Sixth Motion to Amend and Amended

Complaint"); 43 ("Seventh Motion to Amend and Amended Complaint") (collectively, "Motions to

Amend and Amended Complaints"); 22 ("Motion to Dismiss"); 38 ("Letter Motion").  For the

reasons that follow, the Motions to Amend are denied, the Motion to Dismiss is granted, and the

Letter Motion is granted in part and denied in part.

## II.    FACTUAL BACKGROUND [2]

On or about February 4, 2012, Plaintiff began working for ShopRite—an owner and operator

of supermarkets—as a frozen-food-department "stocker."  He initially worked at ShopRite's

Niskayuna and Hudson stores.  Plaintiff's performance was not criticized; to the contrary, it was

praised by a Niskayuna employee named Stan.  After working for ShopRite for approximately 75

days, Plaintiff began working at ShopRite's Albany store.  On April 11, 2012, after a single day of

work at the Albany location, Plaintiff's employment was terminated by Ausiano, the store manager,

on the stated basis of slow work-rate, poor customer-service skills, and difficulty with pricing.

That same day, Plaintiff asked the United Food and Commercial Worker Union Local 1262

("the Union")—of which he was a member and to which he paid dues—to investigate, but, despite

promising to do so, the Union did not follow up with ShopRite or assist Plaintiff in any way.

Second Opp'n Ex. B ("Human Rights Complaint") at 00014.[3]  Plaintiff also filed the Human Rights

---

[2] Because this matter is before the Court on a motion to dismiss, the allegations of the
Original Complaint are accepted as true and form the basis for this section.  See Boyd v. Nationwide
Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72
(2d Cir. 2011) ("In reviewing a motion to dismiss, a court must view all factual allegations in a light
most favorable to the plaintiff and draw[] all reasonable inferences in her favor.").

[3] Citations to the Human Rights Complaint refer to the Bates number stamped at the bottom
of each page.

Complaint regarding his termination with the New York State Division of Human Rights

("Division"), which was then cross-filed with the Equal Employment Opportunity Commission

("EEOC").  See Human Rights Compl.; Dkt. No. 5 ("EEOC Complaint").  The Division

subsequently informed Plaintiff that, prior to his termination, a female coworker had complained to

ShopRite that Plaintiff had sexually harassed her.  Plaintiff concluded that a coworker, Melissa

Stiles ("Melissa"), with whom he was having a consensual sexual relationship, had lodged a false

complaint against him.  Since his termination, Plaintiff has been distraught about his inability to

meet certain financial commitments to his children—financial commitments of which Defendants

were aware before they terminated Plaintiff.

### III.    PROCEDURAL HISTORY

On June 6, 2013, Plaintiff filed his Original Complaint, which consisted of a Title VII Form

Complaint and an attachment that further described the facts underlying Plaintiff's termination.

Orig. Compl. at 1-5 ("Form Complaint"), 6-7 ("Attachment").  He then applied for, and was

granted, leave to proceed *in forma pauperis*.  Dkt. Nos. 4, 6-7, 9.  Plaintiff subsequently filed a

document, entitled "A Motion to Amend," which omitted many of the facts and claims underlying

the Original Complaint but provided supplementary argumentation—much of it in the form of

rhetorical questions—and factual allegations.  Dkt. No. 19 ("First Motion to Amend").  Judge

Baxter denied the First Motion to Amend and ordered that it be stricken from the docket.  Dkt. No.

20 ("Order to Strike").  The Order to Strike noted that, while Plaintiff was entitled to amend the

Original Complaint as a matter of right under Rule 15(a) of the Federal Rules of Civil Procedure,

the First Motion to Amend did not comply with Local Rule 7.1(a)(4) because it did not constitute a

complete amended complaint that could be filed by the Clerk of the Court.  Judge Baxter granted

Plaintiff leave to file an amended complaint only if it were "a *complete* pleading that supersedes the original in all respects . . . [and] contain[s] all the information that appears in the original, together with the additional statements that plaintiff wishes to make." Id. at 3.

Defendants then filed the Motion to Dismiss, which was accompanied by a Memorandum of law. Mot. to Dismiss; Dkt. No. 22-1 ("Memorandum of Law"). Plaintiff's barrage of Motions to Amend and Amended Complaints followed.[4] All six of the Amended Complaints are nearly identical to the Attachment and one another. Some of the Motions to Amend apparently seek to add new claims and/or defendants. The Fourth Motion to Amend appears to attempt to join: (1) the Union and bring a breach-of-the-duty-of-fair-representation ("DFR") claim against it; (2) Melissa and bring a defamation claim against her; and (3) the Wakefern Food Corporation ("Wakefern"), for unspecified reasons. The Fifth Motion to Amend appears to seek to add a breach-of-contract claim against Defendants, while the Fourth and Seventh Motions to Amend appear to contemplate the addition of a Title VII hostile-environment claim against Defendants.

Defendants filed an Answer to the Original Complaint on May 14, 2013. Dkt. No. 27 ("Answer"). They then filed Oppositions to the Second and Third Motions to Amend and to the Fourth and Fifth Motions to Amend. Dkt. Nos. 28 ("First Opposition"); 38 ("Second Opposition"). Plaintiff filed a Response to the Motion to Dismiss, and Defendants filed their Reply. Dkt. Nos. 29 ("Response"); 37 ("Reply"). Defendants also filed the Letter Motion asking the Court to set a deadline for motions to amend as well as a briefing schedule that would allow Defendants to submit a consolidated response to the Motions to Amend. Letter Mot.

---

[4] Only the Second and Third Motions to Amend were filed within 21 days of the service of the Motion to Dismiss.

## IV.    MOTIONS TO AMEND

### A. Legal Standard

Pursuant to Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of course within 21 days of serving it. Rule 15(a)(1)(B) provides an extended amendment-as-a-matter-of-course window where the pleading to be amended is one "to which a responsive pleading is required." In such cases, a plaintiff may amend within 21 days of the earliest-served responsive pleading or certain Rule 12 motions. Id. In all other cases, a party may amend its pleading only with written permission from the other party or a court's leave, although courts are instructed to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Despite this liberal standard, courts should deny leave to amend when a plaintiff seeks to add a claim that is futile because it would not survive a motion to dismiss. See Foman v. Davis, 371 U.S. 178, 182 (1962); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); Ruiz v. Suffolk Cnty. Sheriff's Dep't, No. 03 Civ. 3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (leave to amend should be denied where the claim is "clearly frivolous or legally insufficient on its face" (internal quotation marks and citation omitted)); Benfield v. Mocatta Metals Corp., No. 91-Civ.-8255, 1992 WL 177154, at *1 (S.D.N.Y. July 13, 1992) ("If a proposed amendment would be insufficient to withstand a motion to dismiss, it is futile and leave to amend should be denied."). A motion to amend should be denied with prejudice when the futility of the proposed amendment is incurable. See Robledo v. No. 9 Parfume Leasehold, No. 12 Civ. 3579, 2013 WL 1718917, at *7 (S.D.N.Y. Apr. 9, 2013); James v. Countrywide Fin. Corp., No. 10-CV-4953, 2013 WL 249459, at *5 (E.D.N.Y. Jan. 23, 2013).

All pleading amendments, including amendments as of right, must comply with Local Rule

5

7.1(a)(4), which provides that a party moving to amend must attach a proposed amended complaint that constitutes "a complete pleading, which will supersede the original pleading in all respects . . . [and] shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." Failure to comply with this rule is grounds for denying a motion to amend. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009).

### B. Discussion

#### 1. Improper Form and Frivolity

Plaintiff is entitled to file either the Second or Third Amended Complaints as an amendment of right under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure because both were filed within 21 days of the service of the Motion to Dismiss. However, the Court denies the Second and Third Motions to Amend because neither the Second nor the Third Amended Complaint constitutes the "complete" complaint required by Local Rule 7.1(a)(4) and the Order to Strike. The Second and Third Amended Complaints, while practically identical to the Attachment to the Original Complaint, omit much of the information and some of the claims contained in the Form Complaint section of the Original Complaint: these Amended Complaints fail to clearly identify Defendants as the defendants in this action, fail to mention Plaintiff's state-law claims, and, at most, indirectly reference discrimination.[5]

Because the Fourth, Fifth, Sixth, and Seventh Amended Complaints were filed more than 21 days after the Motion to Dismiss was served, Plaintiff may not amend his complaint unless the Court grants leave. The Court declines to do so because of Local Rule 7.1(a)(4) infirmities similar

---

[5] The Second and Third Amended Complaints also omit much of the relevant factual information contained in the various Motions to Amend, including an incident of misconduct by a white coworker whom Defendants did not terminate.

6

to those described above: these Amended Complaints fail to clearly identify the Defendants as the

defendants in this action and include only the most tangential reference to Plaintiff's Title VII claim.

Moreover, these Amended Complaints are frivolous: while they omit much of the information

contained in the Form Complaint, they are practically identical to the Attachment to the Original

Complaint and contain no new pertinent information.  The Court therefore denies the Second, Third,

Fourth, Fifth, Sixth, and Seventh Motions to Amend.

> ### 2.  Futility

While the Motions to Amend are subject to denial in their entirety for improper form, the

Court will do so without prejudice and give Plaintiff one final chance to submit a proper amended

complaint.  However, the Court must analyze the specific claims that Plaintiff seeks to add in order

to determine whether the Motions to Amend, to the extent they seek to add such claims, are subject

to denial with prejudice because of incurable futility.

> #### a.  Joinder of New Defendants

> #### i. DFR Claim Against the Union

Plaintiff appears to seek joinder of the Union so that he can bring a DFR claim against it.

See Fourth Mot. to Amend ("I would like to make a complaint against . . . United [F]ood and

Commercial Worker Union 1262. Because they w[ere] taking my money for union dues [a]nd they

knew about everything that was going on and did nothing to help me.").  But such a claim is both

substantively futile and time-barred.  To prevail on a DFR claim, a union member must demonstrate

that the union's conduct was "arbitrary, discriminatory, or in bad faith."  Marquez v. Screen Actors

Guild, Inc., 525 U.S. 33, 44 (1998) (citing Vaca v. Sipes, 386 U.S. 171, 190 (1967)).  "[A] union's

actions are arbitrary only if . . .  the union's behavior is so far outside a 'wide range of

reasonableness,' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)

(citation omitted) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).  A DFR

arbitrary-conduct claim does not lie where a union "fail[s] to take an action that is unlikely to be

advantageous."  Barr v. United Parcel Serv., 868 F.2d 36, 44 (2d Cir. 1989).  A union acts in bad

faith where its conduct is "fraudulent, deceitful, or dishonest."  Sim v. N.Y. Mailers' Union No. 6,

166 F.3d 465, 472 (2d Cir. 1999); see also Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126

(2d Cir. 1998).  A plaintiff seeking to recover on a DFR claim must also demonstrate "a causal

connection between the union's wrongful conduct and [her] injuries." Id.

 In this case, Plaintiff alleges that the Union did nothing to challenge or investigate Plaintiff's

termination despite promising to do so.  But he has not alleged that the Union acted in bad faith or

from a discriminatory motive.  Nor has he alleged any facts indicating that the Union's failure to

pursue a grievance or seek other recourse was irrational.  And because Plaintiff himself

acknowledges that he was a probationary employee, for whom the collective bargaining agreement

("CBA") between ShopRite and the Union appears to provide no grievance or arbitration process,

the Union's failure to grieve or challenge the termination cannot be deemed irrational.[6]  Likewise,

---

[6] Plaintiff's status under the CBA, and the concomitant recourse available to the Union to challenge his termination, are uncertain.  Defendants insist that Plaintiff was a probationary employee because "all new employees" are subject to a 90-day probationary period under the CBA. Mem. of law at 2.  Plaintiff agrees.  See Resp. at 1 ("I've worked most of the 90 day[] Probation Period.").  Defendants further argue that the CBA's grievance and arbitration provisions are therefore inapplicable to Plaintiff.  See Mem. of law at 2; First Opp'n at 1-2; Second Opp'n at 8 n.2. Defendants have provided an excerpt from the CBA that they claim proves both of these contentions.  See Second Opp'n Ex. A ("CBA Excerpt").  The Court may consider this document given its incorporation by the Original Complaint and the Response.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (in deciding a motion to dismiss, a court "may consider . . . documents incorporated by reference in the complaint").  But the CBA Excerpt is not as definitive as Defendants suggest.  It describes two "trial periods": (1) a 60-day period for "newly engaged employees" that may be extended to 90 days at the request of ShopRite to the Union, and;

Plaintiff has not alleged any specific harm flowing from the Union's failure to investigate or challenge his termination, nor can he if his termination could not be challenged under the CBA.

The DFR claim is also incurably futile because it is time-barred. There is a six-month statute of limitations for DFR claims that begins to run when the plaintiff "knew or reasonably should have known that a breach [of the duty of fair representation] has occurred." Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004). Plaintiff was terminated on April 11, 2012, and sought the assistance of the Union the same day. He filed the Original Complaint 11 months later. Within a few months of his termination, Plaintiff should reasonably have known that the Union was not going to pursue or remedy his termination. Thus, the statute of limitations elapsed before Plaintiff filed his Original Complaint. To the extent that the Amended Complaints seek joinder of the Union, they are therefore denied with prejudice.

### ii. Defamation Claim Against Melissa

---

(2) a 90-day trial period for all employees "newly employed" at a "new or remodeled store[] . . . opened by [ShopRite]." CBA Excerpt at 6-7. Defendants have not alleged that the default 60-day trial period was extended to 90 days by a request to the Union. While Defendants assert that Plaintiff was hired to work at the newly opened Albany store and merely "trained" at other locations, the CBA Excerpt does not foreclose the possibility that an employee, whatever the purpose of his hiring, who works/trains at existing store locations for two months before moving to a newly opened store is not "newly employed" at a "new" store and is therefore not subject to the 90-day new-store trial period. First Opp'n at 1.

Moreover, even if Plaintiff was subject to a 90-day trial period, the import of such a period is not clear from the CBA Excerpt. The CBA Excerpt describes the aforementioned "trial periods" for employees as well as a "probationary period" for "department managers and classified employees." CBA Excerpt at 6-7. It goes on to say that the "discharge of *probationary* employees is not subject to the grievance and arbitration provisions contained in [the CBA]." Id. at 7 (emphasis added). It is thus uncertain whether this "probationary employee" grievance-and-arbitration-exclusion provision applies to both non-managerial and managerial employees or simply the latter—the only employees who are defined in the CBA as "probationary." However, the Court need not resolve these uncertainties at this stage of the litigation; it is enough for present purposes that there is at least a substantial possibility that Plaintiff was a probationary employee who could not take advantage of the grievance and arbitration provisions of the CBA.

Plaintiff also seeks to bring a claim against his coworker Melissa for defamation, based on either her complaints to ShopRite management regarding sexual harassment by Plaintiff or her statements to the Division and/or EEOC regarding the same.  See Fourth Am. Compl. at 3 ("I would like to make a complaint against Melisa for fals[e] allegations.").  But a claim based on the former statements would be time-barred, and a claim based on the latter is subject to dismissal pursuant to the absolute judicial-proceedings privilege.

A)  Statute of Limitations

Defamation claims have a one-year statute of limitations, which begins to run on the date the defamatory statement is made, not the date the plaintiff discovers the statement.  See N.Y. C.P.L.R. § 215(3); Frederick v. Fried, 780 N.Y.S.2d 908, 908-09 (App. Div. 2004); Karam v. First Am. Bank of N.Y., 593 N.Y.S.2d 640, 640 (App. Div. 1993).  Any internal sexual-harassment complaint made by Melissa must have occurred prior to Plaintiff's termination on April 11, 2012.  But Plaintiff did not file his Fourth Motion to Amend, which sought to bring a defamation claim against Melissa, until late May 2013, more than 12 months later.  The defamation claim is therefore untimely unless Plaintiff can demonstrate that it "relates back" to the Original Complaint.

An amended complaint adding new parties may relate back under Rules 15(c)(1)(A) or (c)(1)(C) of the Federal Rules of Civil Procedure.  Pursuant to Rule 15(c)(1)(C), a claim against a defendant who was omitted from the original pleading cannot relate back unless that defendant, "within the period provided by Rule 4(m) for serving the summons and complaint . . . (i) received notice of the action . . . ; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Neither the notice nor "knowledge-of-mistake" requirement has been met in this case.  Rule 4(m) of the Federal Rules of

Civil Procedure provides for a 120-day post-complaint-filing service period.[7]  There is no indication that Melissa has ever received notice that Plaintiff brought a civil action, let alone that she received such notice within 120 days of the filing of the Original Complaint.  See Amaya v. Garden City Irrigation, Inc., 645 F. Supp. 2d 116, 122 (E.D.N.Y. 2009) (no relation back where there is "no suggestion that [the party to be added] knew about the lawsuit" within the 120-day period).  Nor can constructive notice be inferred from Melissa's employment by ShopRite.  While constructive notice may be found where "the attorney who represents the original defendant(s) . . . would represent the prospective defendant(s) if leave to amend were granted," Smith v. Westchester Cnty. Dep't of Corr., No. 07-CV-1803, 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012),  Defendants' attorneys are unlikely to represent Melissa were she joined in this action, because they have already disclaimed liability for her conduct and pointed out her potential personal liability.  See Reply at 3.

Moreover, even if Melissa had notice of the Original Complaint, she could not have known that "the action would have been brought against [her], but for a mistake concerning the proper party's identity."  FED. R. CIV. P. 15(c)(1)(C)(ii).  The Supreme Court has emphasized that the "mistake" analysis ultimately turns on the added defendant's perception of the mistaken *vel non* nature of the plaintiff's failure to originally name her.  See Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485, 2493 (2010) ("The question under Rule 15(c)(1)(C)(ii) is not whether [plaintiff] knew or

---

[7] The 120-day period may be extended where "the plaintiff shows good cause" for not effecting service within that period.  FED. R. CIV. P. 4(m).  In such a case, "the court must extend the time for service for an appropriate period."  Id.  In this case, the Summons and Original Complaint were served within 120 days of the filing of the Original Complaint.  See Dkt. Nos. 10-11. Therefore, no extension of the 120-day period was needed or granted and Melissa must have received notice within 120 days of the filing of the Original Complaint for there to be relation back. Cf. Jackson v. Harrington, No. 08-5613, 2010 WL 3398900, at *4 (6th Cir. Aug. 31, 2010) (where *in forma pauperis* plaintiff's complaint was not served by the court until 250 days after the complaint was filed, Rule 15(c)(1)(C)'s notice period extended to 250 days).

should have known the identity of . . . the proper defendant, but whether [the defendant] knew or should have known that it would have been named as a defendant but for an error."). A mistake under Rule 15(c)(1)(C)(ii) may be factual or legal. A plaintiff makes a factual mistake where, at the time of the original complaint, she was not aware of the conduct the omitted party engaged in. See Vasquez v. Mill, No. 03 Civ. 3905, 2006 WL 2789914, at *4 (S.D.N.Y. Sept. 25, 2006) (relation back where the plaintiff mistakenly believed that the originally named officers had arrested him but learned from the defendants' motion to dismiss that other officers had done so); cf. Palmer v. Stuart, No. 06-1594-pr, 2008 WL 1813182, at *1 (2d Cir. Apr. 22, 2008) (no mistake of fact where the plaintiff was "in a position to know the names and relevant actions" of the omitted defendants before filing the original complaint); Cornwell v. Robinson, 23 F.3d 694, 705 (2d Cir. 1994) (no mistake of fact where an exhibit to the original complaint identified the omitted defendants and described their conduct); Boda v. Phelan, No. 11-CV-00028, 2012 WL 3241213, at *6 (E.D.N.Y. Aug. 6, 2012) (no mistake of fact where the omitted defendant "was identified several times by name in the original complaint, demonstrating that plaintiff clearly knew of her identity and her role in the events giving rise to the claims at issue").

A plaintiff makes a legal mistake where she is aware of the conduct of both the originally named and omitted defendant but errs as to which party is liable for her injuries. See Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 36-37 (2d Cir. 1996) (relation back where the plaintiff sued a correctional facility but not individual officers under 42 U.S.C. § 1983 because the plaintiff "*was required to sue the individual defendants to maintain an action*" and his failure to do so was clearly the result of a misunderstanding of "the technicalities of constitutional tort law"); Rivers v. City of Rochester, No. 06-CV-6391L, 2010 WL 1408003, at *4 (W.D.N.Y. Mar. 30, 2010) ("A mistake of

12

law can constitute a mistake under Rule 15(c)(3) where a plaintiff initially sues a governmental agency and then later seeks to add the individual defendants based upon a legal misconception of the requirements of his cause of action."); see also Pinsonneault v. City of Hamden, No. 11-CV-00946, 2012 WL 3637639, at *6 (D. Conn. Aug. 22, 2012) (mistake of law where the complaint clearly indicated that the plaintiff wished to sue his employer but named a non-employer entity). However, there is no mistake of law where the originally named party is potentially liable for the plaintiff's injuries—even if the omitted party might also be liable. See Cornwell, 23 F.3d at 705 (no mistake where the complaint was legally adequate without the defendants whom the plaintiff sought to add); Dupree v. Pough, 454 F. Supp. 2d 166, 174 (S.D.N.Y. 2006) (no mistake of law where the plaintiff's original complaint was "entirely sufficient" without the addition of omitted defendant); Martinez v. Robinson, No. 99 Civ. 11911, 2001 WL 498407, at *4 (S.D.N.Y. May 10, 2001) (denying the plaintiff leave to add a city defendant to a § 1983 action where the plaintiff named individual corrections officers in his original complaint).

In this case, Plaintiff made neither a factual nor a legal mistake. Plaintiff did not mistakenly believe that Defendants had engaged in conduct Melissa had actually engaged in—to the contrary, as reflected in part by the Original Complaint itself, Plaintiff was aware before its filing that: (1) a female coworker made a sexual harassment complaint against him; and (2) the female coworker might have been Melissa, with whom he had been having a sexual relationship. Plaintiff did not make a legal mistake, because the Original Complaint was legally sufficient despite the omission of Melissa: Defendants were potentially liable for their own and Melissa's allegedly defamatory statements. Even if Plaintiff was unaware that Defendants could not be held liable for defamatory

13

statements Melissa made outside the scope of her employment,[8] and even if such a misunderstanding constituted a mistake under Rule 15(c)(1)(C)(ii), Melissa, as a layperson without legal representation, had no reason to know that Plaintiff had made such a mistake: she could not have known that Plaintiff had misunderstood the rules of respondeat superior liability and, but for that misunderstanding, would have named her as a defendant.  There is therefore no relation back under Rule 15 (c)(1)(C).

Rule 15 (c)(1)(A) permits relation back if the applicable state relation-back provision would so allow.  But N.Y. C.P.L.R. § 203(b), the New York relation-back provision, contains a mistake-in-identity requirement akin to Rule 15(c)(1)(C)'s.  See Basher v. Madonna Realty, No. 01-CV-5116, 2007 WL 2028117, at *5 (E.D.N.Y July 11, 2007) ("Likewise, Plaintiff cannot take advantage of the relation-back provision in section 203(b) of the C.P.L.R., which also requires a showing of mistake in identity."); Sidney v. Wilson, 228 F.R.D. 517, 521 (S.D.N.Y. 2005); West v. City of New York, 88 Civ. 1801, 1995 WL 75475, at *2  (S.D.N.Y. Feb. 22, 1995) ( "[A] plaintiff faces the same obstacle under CPLR § 203(b) as he does under Rule 15(c): if he cannot demonstrate the requisite 'mistake,' the amendment will not relate back under either statute."); Buran v. Coupal, 661 N.E.2d 978, 982 (N.Y. 1995).  Thus, there is also no relation back under Rule 15(c)(1)(A).  Any defamation claim based on Melissa's harassment complaint is therefore time-barred and incurably futile.

### B)  Judicial-Proceedings Privilege

Plaintiff might also be seeking to join Melissa based on statements that she may have made to the Division or EEOC.  While such claims might be timely, they would be futile because

---

[8] Even after receiving the Motion to Dismiss, in which Defendants argued that they were not liable for statements Melissa made outside the scope of her employment, Plaintiff filed two Motions to Amend that did not seek to join Melissa.

14

statements to the Division or EEOC, even false ones, are protected by an absolute judicial-proceedings privilege. See Farzan v. Wells Fargo Bank, No. 12 Civ. 1217, 2013 WL 2641643, at *4 (S.D.N.Y. June 11, 2013) ("New York state law is quite clear that statements made in the course of an EEOC investigation are privileged and cannot form the basis of a defamation claim."); Daniels v. Alvarado, No. 03 CV 5832, 2004 WL 502561, at *8 (E.D.N.Y. Mar. 12, 2004) ("[S]tatements submitted on behalf of [plaintiff's employer] to the New York State Division of Human Rights are protected by absolute privilege."); Panghat v. N.Y. Downtown Hosp., 925 N.Y.S.2d 445, 474 (App. Div. 2011).  While the judicial-proceedings privilege may be lost where the defendant makes statements wholly irrelevant to the proceeding or initiates proceedings solely to provide a forum for defaming the plaintiff, see Casa de Meadows Inc. v. Zaman, 908 N.Y.S.2d 628, 631 (App. Div. 2010),  neither exception is applicable here because: (1) any statement Melissa made regarding harassment by Defendant was relevant to the Division's investigation of the discriminatory *vel non* nature of that termination; and (2) Plaintiff, not Melissa, initiated the Division's investigation. Because any defamation claim against Melissa is incurably defective, the Motions to Amend are denied with prejudice to the extent that they seek to join her.

### iii.  Claim Against Wakefern

Finally, Plaintiff seeks to join Wakefern.  But Plaintiff fails to offer even the most cursory explanation of the reasons Wakefern should be joined in this action.  Nor is Wakefern mentioned in the Original or any of the Amended Complaints.  The Court therefore denies the Motions to Amend without prejudice to the extent they seek Wakefern's joinder.  If Plaintiff wishes to join Wakefern, he must provide a complete amended complaint that identifies which claims he seeks to bring against Wakefern and the factual basis underlying those claims.  See FED. R. CIV. P. 8(a); Local

Rule 7.1(a)(4).  Because Plaintiff is proceeding *in forma pauperis* and the U.S. Marshal must

therefore effect service on all defendants if Plaintiff so requests, Plaintiff must provide an address

for Wakefern if he seeks its joinder.  Furthermore, any motion to join Wakefern should discuss

Plaintiff's entitlement to joinder under Rule 20 of the Federal Rules of Civil Procedure, which

provides that defendants may be joined in a single action where: "(A) any right to relief is asserted

against them . . . with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise

in the action."

<u>b.</u>  New Claims Against Defendants

i.  Title VII Hostile-Environment Claim

Plaintiff also appears to seek to add a Title VII hostile-environment claim against

Defendants.  <u>See</u> Fourth and Seventh Mots. to Amend.  "In order to establish a hostile work

environment claim under Title VII, a plaintiff must . . . show that the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." <u>Rivera v.</u>

<u>Rochester Genesee Reg'l Transp. Auth.</u>, 702 F.3d 685, 693 (2d Cir. 2012) (citation and internal

quotation marks omitted).  Plaintiff alleges no more than that he felt "uncomfortable" and "out of

place" during his single day of employment at the Hudson store because no one spoke to him,

helped him, or showed him what he should do.  Fourth Mot. to Amend.  This is insufficiently severe

or pervasive to give rise to Title VII hostile-environment liability.  <u>See</u> <u>Krasner v. HSH Nordbank</u>

<u>AG</u>, 680 F. Supp. 2d 502, 508 (S.D.N.Y. 2010) (even a supervisor's conduct that made the plaintiff

feel "uncomfortable " insufficiently severe or pervasive for Title VII liability); <u>Dorrilus v. St. Rose's</u>

16

<u>Home</u>, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) ("impolite" conduct insufficiently severe or pervasive).  The hostile-environment claim is therefore incurably futile and Plaintiff's Motions to Amend, to the extent they seek to add such a claim, must be denied with prejudice.

### ii. Breach-of-Contract Claim

Plaintiff also seeks to bring a breach-of-contract claim against Defendants.  In New York, employment is presumed to be at will.  <u>Horn v. N.Y. Times</u>, 790 N.E.2d 753, 755, 759 (N.Y. 2003).  Where an at-will employee is terminated, no cause of action for breach of contract will lie unless the employee can demonstrate that an express or implied agreement limited the employer's freedom to terminate her.  <u>See</u> <u>Lobosco v. N.Y. Tel. Co./NYNEX</u>, 751 N.E.2d 462, 464-65 (N.Y. 2001); <u>Mayer v. Publishers Clearing House</u>, 613 N.Y.S.2d 190, 190 (App. Div. 1994); <u>Lerman v. Med. Assocs. of Woodhull</u>, 554 N.Y.S.2d 272, 272 (App. Div. 1990).  In this case, the only possible agreement to that effect is the CBA.  State contract claims for breach of a collectively bargained agreement are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which provides two types of breach-of-contract actions: (1) a "pure" § 301 claim and; (2) a "hybrid" § 301 claim.  <u>See Avedisian v. Quinnipiac Univ.</u>, No. 09-3088-CV, 2010 WL 2838540 , at *2 (2d Cir. July 21, 2010).  To bring a pure § 301 claim, an employee must demonstrate that she exhausted the grievance and arbitration remedies provided by the collective bargaining agreement.  <u>See</u> <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 163 (1983); <u>Cephas v. MVM, Inc.</u>, 520 F.3d 480, 485 (D.C. Cir. 2008) (citing <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650, 652-53 (1965)).  If an employee has not exhausted her grievance and arbitration remedies, she must bring a hybrid § 301 claim and demonstrate that she could not exhaust her remedies because the union breached its duty of fair representation.  <u>DelCostello</u>, 462 U.S. at 163-65; <u>Hines v. Anchor Motor Freight, Inc.</u>, 424 U.S.

554, 562 (1976).

In light of the Fourth Motion to Amend's allegation that the Union "failed to help him," Plaintiff's breach-of-contract claim could be read to constitute a hybrid § 301 claim. But such a claim would be futile because: (1) Plaintiff cannot show that the Union breached its duty of fair representation; and (2) a hybrid § 301 claim is governed by a six-month statute of limitations and would therefore be time-barred. See supra Part IV.B.2.a.i.; DelCostello, 462 U.S. at 164; Washington v. Garage Mgmt. Corp., No. 11 Civ. 3420, 2012 WL 4336163, at *12 (S.D.N.Y. Sept. 20, 2012). In light of the liberal construction owed to *pro se* motions, the somewhat unintelligible form of the Fourth Motion to Amend, and the possible viability of a pure § 301 claim, the Court will instead construe the Fourth Motion to Amend to attempt to bring such a claim.

Defendants argue that Plaintiff cannot bring a pure § 301 claim because he has not exhausted the CBA's grievance and arbitration remedies. See Second Opp'n at 15. But Defendants also assert that Plaintiff was a probationary employee, and the CBA Excerpt states that the "the discharge of probationary employees is not subject to the grievance and arbitration provisions contained in . . . the [CBA]."[9] If Plaintiff could not use any of the arbitration or grievance remedies under the CBA, then surely he has "exhausted" those remedies and may bring a pure § 301 claim.

Nor would a pure § 301 claim be barred by a six-month statute of limitations as Defendants appear to contend. See Second Opp'n at 10. A pure § 301 claim, unlike a hybrid § 301 claim, is generally subject to the most closely analogous state statute of limitations, which in most cases is the statute of limitations for breach-of-contract cases. See UAW v. Hoosier Cardinal Corp., 383

---

[9] Defendants appear to acknowledge the inapplicability of the grievance and arbitration provision to Plaintiff. See Second Opp'n at 8 ("As a probationary employee, [Plaintiff's] termination was not subject to the provisions contained in the [CBA].").

U.S. 696, 697-98 (1996) (applying state breach-of-contract statute of limitations to § 301 suit for vacation pay owed pursuant to a collective bargaining agreement); <u>Tand v. Solomon Schechter Day Sch. of Nassau Cnty.</u>, 324 F. Supp. 2d 379, 383-84 (E.D.N.Y. 2004) (applying New York's six-year breach-of-contract statute of limitations to a pure § 301 claim); <u>Tricoles v. Jamaica Water Supply</u>, No. CV 92-2920, 1993 WL 723362, at *7-9 (E.D.N.Y. Aug.30, 1993) (same); <u>see also</u> <u>Cephas</u>, 520 F.3d at 488-90 (applying state beach-of-contract statute of limitations to a pure § 301 action).  The New York statute of limitations for breach of contract is six years, N.Y. C.P.L.R. § 213(2), and thus a pure § 301 claim against Defendants is not time-barred.

To prevail on a § 301 claim, Plaintiff would have to show that Defendants breached the CBA.  But without a copy of the full CBA, the Court cannot evaluate the futility of such a claim.  Moreover, even the brief CBA Excerpt indicates that there might be a viable claim.  While it contains a broad management-rights clause, the CBA Excerpt also contains the following provision: "There shall be no suspension because of work performance, absenteeism and/or tardiness, without prior written notice having been given to the union and the employee involved."  Nothing in the CBA Excerpt definitively indicates that this provision does not apply to the termination of trial-period/probationary employees.  The Court therefore denies Plaintiff's Motions to Amend, to the extent that they seek to add a pure § 301 claim against Defendants, without prejudice to allow Plaintiff to re-plead it in the proper form.

## V.    MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atl.</u>

<u>Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> Fed. R. Civ. P. 12(b)(6).  A court must

accept as true the factual allegations contained in the complaint and draw all inferences in favor of a

plaintiff.  <u>See</u> <u>Allaire Corp. v. Okumus</u>, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be

dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a

claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.  Plausibility requires

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged

misconduct]." <u>Id.</u> at 556.  The plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  "[T]he

pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> (citing <u>Twombly</u>,

550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged

misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief

and the action is subject to dismissal.  <u>See id.</u> at 678-79.  However, the allegations of a *pro se*

litigant are to be construed under a "less stringent standard[] than formal pleadings drafted by

lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>see also</u> <u>Harris v. Mills</u>, 572 F.3d 66, 72

(2d Cir. 2009).  "A *pro se* plaintiff . . . should be afforded an opportunity fairly freely to amend his

complaint." <u>Holmes v. Goldin</u>, 615 F.2d 83, 85 (2d Cir. 1980); <u>see also</u> <u>Sealed Plaintiff v. Sealed</u>

<u>Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008); <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)

("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting

leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated.").  Nevertheless, a claim should be dismissed with prejudice where any

amendment would be futile.  See Foman, 371 U.S. at 182; Rivera v. Governor of N.Y., No.

02-7962, 2004 WL 569274, at *1 (2d Cir. Mar. 23, 2004).

### B. Intentional-Infliction-of-Emotional-Distress Claim

In order to make out a claim of intentional infliction of emotional distress ("IIED"), a

plaintiff must demonstrate: (1) extreme and outrageous conduct; (2) intent to cause or disregard of a

substantial probability of causing, severe emotional distress; (3) a causal connection between the

conduct and injury; and (4) severe emotional distress.  Howell v. N.Y. Post Co., 612 N.E. 699, 702

(N.Y. 1993).

Plaintiff's IIED claim arises from Defendants' termination of his employment, which

Plaintiff alleges deprived him of a job he loved, prevented him from meeting his financial

obligations to his four children, and distressed him greatly.  See Resp.  Plaintiff argues that this

distress was foreseeable: Defendants, because they were aware that he was obligated to pay child

support for two of his children, knew that terminating Plaintiff would have distressing

consequences.  Id.

In light of the liberal pleading standard for *pro se* plaintiffs, Plaintiff has arguably alleged

facts sufficient to meet elements two, three, and four of an IIED Claim.  However, Plaintiff has not

sufficiently alleged extreme and outrageous conduct, nor can he.  To support an IIED claim, a

defendant's conduct must be so "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency . . . and [be] utterly intolerable in a civilized community."

Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 90 (N.Y. 1983) (internal quotation marks

omitted).  Termination of employment, even where it is the result of an unseemly or discriminatory

motive, is a staple of modern society and thus, on its own, is neither sufficiently extreme nor

outrageous to support an IIED claim.  See Murphy, 448 N.E.2d at 90 (dismissing an IIED claim by a

30-year employee who alleged that he had been discriminatorily and retaliatorily terminated because

such allegations fell "far short" of the demanding IIED standard); Anderson v. Janson

Supermarkets, No. 30693, 2011 WL 2859816, at *8 (N.Y. Sup. Ct. July 6, 2011) ("The conduct

alleged by plaintiff against Shop Rite is that it . . . wrongfully terminated [plaintiff's] employment.

This conduct does not rise to the level of atrocity or outrageousness necessary to sustain a claim of

this nature.").  Defendants' termination of Plaintiff's employment, despite the foreseeably

distressing financial consequences that may have resulted, cannot be the basis for imposing IIED

liability.

However, while merely terminating employment cannot give rise to an IIED claim,

termination undertaken in a particularly distress-causing manner may do so.  See Kaminski v United

Parcel Serv., 501 N.Y.S. 2d 871, 872-73 (App. Div. 1986) (affirming non-dismissal of IIED claim

based on the employer's conduct leading to the plaintiff's forced resignation).  But the manner of

termination must be sufficiently extreme and outrageous, and even terminations involving callous-

seeming criticism of a plaintiff's performance have not subjected employers to IIED liability.  See

Daniels, 2004 WL 502561, at *6 (dismissing an IIED claim where the employer accused the

plaintiff of fraud and incompetency and holding that "evaluations of employees' conduct and

performance do not rise to the level of intentional infliction of emotional distress"); Malamood v.

Kiamesha Concord, Inc., 582 N.Y.S.2d 118, 119-20 (App. Div. 1992) (dismissing an IIED claim

where the employer terminated the plaintiff, who suffered from cancer, by telling him that he was

"through" and "finished"); cf. Kaminski, 501 N.Y.S.2d at 872-73 (affirming non-dismissal of an

IIED claim where supervisors subjected the plaintiff to three hours of confinement, abusive

language, and threats of criminal prosecution and prison time on Riker's Island).  The performance-based explanation Ausiano offered Plaintiff at the latter's termination is insufficiently outrageous or extreme to support IIED liability.  Plaintiff's IIED claim is therefore dismissed.  Furthermore, the Court denies Plaintiff leave to amend his IIED claim because any such amendment would be futile.[10]

### C. Defamation Claim

In order to make out a claim of defamation, a plaintiff must allege: (1) a defamatory statement of fact concerning the plaintiff; (2) publication by the defendant to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability.  Celle v. Filipino Reporter Enterprises Inc. 209 F.3d 163, 176 (2d Cir. 2000).  Certain statements, even if they satisfy the above elements, are privileged and cannot give rise to defamation liability.  See Birch v. JP Morgan Chase & Co., 685 F. Supp. 2d 350, 356 (E.D.N.Y. 2010).

Plaintiff argues that Defendants, by placing the sexual-harassment complaint on his "record," have damaged his reputation and impeded his ability to find work by making him "look like a sexual predator and abusive to wom[e]n and a womanizer."  Resp. at 2.  Plaintiff's defamation claim may potentially be premised on four classes of statements regarding his alleged harassment: (1) Defendants' internal communications and/or communications with prospective employers; (2) Defendants' statement to the Division, in the course of the latter's investigation of Plaintiff's discrimination complaint, that Plaintiff had been terminated due to a sexual-harassment complaint by a coworker; (3) Melissa's sexual-harassment complaint itself; and (4) Plaintiff's forced re-publication of the harassment allegations to prospective employers.  None of these statements can

---

[10] Plaintiff may still recover for any emotional distress he suffered as a result of his termination if he proves that that termination violated Title VII.  See Osorio v. Source Enter's., No. 05 Civ. 10029, 2007 WL 683985, at *5 (S.D.N.Y. Mar. 5, 2007).

support a defamation claim against Defendants.

       *1. Internal Communications and/or Communications with Prospective Employers*

Plaintiff may be alleging that Defendants, through internal communications and/or communications with prospective employers, have defamed him by labeling him a sexual harasser. This claim fails because Plaintiff does not identify any specific statement in which Defendants have done so.  See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of a defamation claim where plaintiff failed "to plead adequately the actual words spoken"); Leung v. N.Y. Univ., No. 08-CV-5150, 2010 WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010) (to avoid dismissal, a plaintiff "must provide a detailed description of the defamatory statements sufficient to afford defendant sufficient notice of the communications complained of to enable him to defend himself" (internal quotation marks omitted)); Johnson v. Markman, 733 N.Y.S.2d 355, 355 (App. Div. 2001) ("Absent allegations particularly setting out defendants' communications to plaintiff's prospective employers, there can be no basis for claiming that the communications were both stigmatizing and false.").

Even if Plaintiff were able to point to a specific defamatory statement, his claim would fail. Statements are protected by a qualified privilege where they are made "by supervisors or co-workers . . . in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge." Albert v. Loksen, 239 F.3d 256, 272 (2d Cir. 2001); see also Daniels, 2004 WL 502561, at *8 ("Statements by employers evaluating the work performance of their employees are . . . not actionable in a defamation suit." (citing Williams v. Varig Brazilian Airlines, 564 N.Y.S.2d 328 (App. Div. 1991))).  Likewise, there is a qualified privilege covering an employer or former

employer's communications to a prospective employer regarding a job applicant.  See Serratore v. American Port Servs., Inc., 739 N.Y.S.2d 452, 466 (App. Div. 2002); Furci v. A.F.C. Contracting Enters., Inc., 680 N.Y.S.2d 673, 674 (App. Div. 1998).

These privileges may be lost by an employer when they are abused; abuse includes acting beyond the privilege's scope, speaking in furtherance of an improper purpose or out of personal spite, or speaking with a reckless disregard for a statement's truth.  See Boyd, 208 F.3d at 410.  But Plaintiff has alleged no facts regarding Defendants' abuse of their qualified privileges.  He has not alleged, for example, that Defendants acted beyond the scope of the privilege by excessively disseminating information about the sexual harassment complaint to ShopRite employees or local employers.  See Bulow v. Women in Need, Inc., 933 N.Y.S.2d 222, 223 (App. Div. 2011) (no excessive disclosure where the supervisory employees informed of an allegation regarding plaintiff's improper behavior did not widely repeat those allegations to other employees).  Moreover, such excessive dissemination seems improbable: Plaintiff himself did not learn of the sexual-harassment complaint against him until well after his termination—and then from only the Division.  Nor has Plaintiff alleged that any communication regarding the harassment complaint was undertaken with an improper purpose or from personal spite.

Finally, while Plaintiff does allege that the harassment complaint was inaccurate and that Defendants did not give him an opportunity to respond to it, such conduct does not amount to reckless disregard of a statement's truth.  Reckless disregard for the truth of a statement requires more than mere uncertainty as to its accuracy.  See Foster v. Churchill, 665 N.E.2d 153, 158 (N.Y. 1996) (no liability where statements were made "without actual knowledge of their truthfulness" but with mere presumption that they were not "wholly false"); Serratore, 39 N.Y.S.2d at 466 (an

employer's statement to a plaintiff's prospective employer is protected even where the statement is inaccurate).  Reckless disregard may be found where the objective falsity of an employer's statement is easily verified and the employer fails to do so.  See Boyd, 208 F.3d at 409, 410-11 (reversing an order dismissing a defamation claim where employer falsely accused the plaintiff of cashing checks that the employer's own records revealed had not been cashed).  But a mere failure to investigate allegations of misconduct against an employee, even where that failure may be unreasonable, does not constitute reckless disregard.  See DeNaro v. Rosalia, 873 N.Y.S.2d 697, 700 (App. Div. 2009); Sanderson v. Bellevue Maternity Hosp. Inc., 686 N.Y.S.2d 535, 536-38 (App. Div. 1999) (dismissing a defamation claim against an employer based on a supervisor's repetition of a coworker's harassment complaint against the plaintiff, even though the supervisor allegedly failed to investigate the complaint's veracity).  Thus, even if Melissa's harassment complaint against Plaintiff were false, and even if Defendants repeated or adopted that complaint in internal or external communications without talking to Plaintiff or otherwise investigating the complaint's veracity, Defendants would not be liable for defamation.

### 2. Statements to the Division

Plaintiff also may be arguing that statements made by Defendants to the EEOC or the Division in the course of its investigation of Plaintiff's Administrative Complaint were defamatory. But, as discussed *supra* Part IV.B.2.a.ii.B, even false statements to the EEOC and the Division are protected by an absolute judicial-proceedings privilege.

### 3. Melissa's Complaint

Defendants also cannot be held liable for any putatively defamatory statements made by Melissa.  An employer is not liable for the torts of an employee committed outside the scope of

employment.  Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 447 (E.D.N.Y. 2009);

Velasquez-Spillers v. Infinity Broad. Corp., 857 N.Y.S.2d 107, 108 (App. Div. 2008).  An employee

acts outside of the scope of employment where she acts from personal motives rather than to

"further" the employer's business.  Sclafani, 668 F. Supp. 2d at 447; Cruz v. Marchetto, No. 11 Civ.

8378, 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012) (citing Murray v. Watervliet City Sch.

Dist., 515 N.Y.S.2d 150, 152 (App. Div. 1987)).  If, as Plaintiff alleges, Melissa falsely complained

of sexual harassment and did so from purely personal motives, Defendants could not be liable for

any defamatory statement she made.  See Sclafani, 668 F. Supp. 2d at 447 (employer not liable for

an assault on company property against a coworker whom the tortfeasor had dated); Velasquez,

N.Y.S.2d at 108 (employer not liable for an intentional tort committed by one coworker against

another).  If, on the other hand, Melissa was acting within the scope of her employment by truthfully

complaining about Plaintiff's sexual harassment, she would not be guilty of defamation and no

liability could attach to Defendants.

### 4. Self-Publication

Plaintiff may also be basing his defamation claim on statements he himself may have made

or will make to prospective employers regarding the harassment complaint.  But "New York does

not recognize defamation via compelled self-publication."  Phillip v. Sterling Home Care, Inc., 959

N.Y.S.2d 546, 547-48 (App. Div. 2013).  Plaintiff's defamation claim is therefore dismissed.

However, the Court grants Plaintiff leave to amend his defamation claim against Defendants and

remedy the aforementioned pleading infirmities.

## V.    CONCLUSION

For the reasons stated above, the Court denies Plaintiff's six Motions to Amend and grants

Defendants' Motion to Dismiss. The Court grants Plaintiff **one** final opportunity to amend. If Plaintiff wishes to amend his Original Complaint, he must do so **within thirty (30) days**. Plaintiff may **not** file more than **one** motion to amend; any additional motions to amend will be ordered stricken from the docket. If Plaintiff files a motion to amend, he may **not** seek to (1) join the Union or Melissa; or (2) bring a Title VII hostile-environment or an IIED claim against Defendants. Any motion to amend must comply with Rule 15 of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(4). In particular, a motion to amend must be accompanied by a **complete** amended complaint that includes **all** of the claims Plaintiff wishes to bring and any facts he wishes to allege. The amended complaint should not include case law, rhetorical questions, or other argumentation. To facilitate the filing of a complete amended complaint, the Clerk of the Court will provide Plaintiff with a blank copy of the Title VII Form Complaint that Plaintiff used to file the Original Complaint.

If Plaintiff wishes to join Wakefern or other non-Union, non-Melissa defendants in this action, his motion to amend must state the basis on which he is seeking joinder. Any amended complaint joining new defendants must also include: (1) the full name and address of any defendants Plaintiff seeks to join; and (2) a brief statement of the claims that Plaintiff wishes to bring against any new defendant as well as any supporting factual allegations.

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED**, that the Original Complaint's (Dkt. No. 1) IIED claim is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Original Complaint's (Dkt. No. 1) Defamation claim is **DISMISSED**

**without prejudice**; and it is further

ORDERED, that Plaintiff's Second, Third, Fourth, Fifth, Sixth, and Seventh Motions to Amend (Dkt. Nos. 24, 24-1, 25, 25-1, 34, 35, 36, 43), are, to the extent that they seek to: (1) join the Union or Melissa; or (2) bring a Title VII hostile-environment claim against Defendants, **DENIED with prejudice**; and it is further

ORDERED, that Plaintiff's Second, Third, Fourth, Fifth, Sixth, and Seventh Motions to Amend (Dkt. Nos. 24, 24-1, 25, 25-1, 34, 35, 36, 43) are otherwise **DENIED without prejudice**; and it is further

ORDERED, that Defendants' Letter Motion (Dkt. No. 38) is, to the extent that the above-ordered limitation on Plaintiff's future motions to amend is consistent with the relief the Letter Motion sought, is **GRANTED in part**; and it is further

ORDERED, that Defendants' Letter Motion (Dkt. No. 38) is, to the extent that the above-ordered limitation on Plaintiff's future motions to amend is inconsistent with the relief the Letter Motion sought, is **DENIED in part**; and it is further

ORDERED, that the Clerk of the Court provide Plaintiff with a blank copy of the Title VII Form Complaint that constituted a part of his Original Complaint (Dkt. No. 1); and it is further

ORDERED, that, if Plaintiff wishes to amend his Original Complaint (Dkt. No. 1), he may do so only **once** and must do so **within thirty (30) days** of the filing date of this Memorandum-Decision and Order in a manner compliant with Rule 15 of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(4); and it is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED: July24, 2013
Albany, New York

Lawrence E. Kahn
U.S. District Judge